Mann and Toles, *against* Pearson.

P gave a bond
to M and T
with a condi-
tion, by which
he agreed to
convey to
them a lot of
land, number
78, in the
township of
Lysander, &c.
containing
600 acres. A
deed was de-
livered to M.
and T. descri-
bing the lot,
and as "con-
taining 600
acres, be the
same more or
less." On ac-
tual survey
the lot was
found to con-
tain only 421
acres and 1-8.
In an action
brought a-
gainst P on
the bond, it
was held that
the mention of
the quantity
of acres was
matter of de-
scription, and
that the deliv-
ery of the
deed for the
lot of land, ac-
cording to its
usual and
known de-
scription, was
a performance
of the condi-
tion of the
bond.

THIS was an action of debt on a bond. The cause
was tried at the *Onondaga* circuit, the 1st of July, 1805,
before Mr. Justice *Tompkins*.

The bond was dated the 11th of *February*, 1799, and for
the penal sum of $1000, to which there was a condition;
that whereas, the defendant had received of the plain-
tiffs their four bonds, of the same date, each for the sum
of $150, [*]payable in one, two, and three years, with
interest; on the full payment of the said four bonds, the
defendant promised to grant and convey to the plaintiffs,
by a good and sufficient warranty deed, lot number 78, in
the township of *Lysander*, containing 600 acres; and
in case the plaintiffs should pay one half of the said
bonds, previous to the time at which they are payable,
that then the defendant would convey to *Mann* the east-
ernmost half, and to *Toles* the westernmost half part, in
which case, &c. the bond to be void, &c.

It was proved by the plaintiffs, that their bonds were
paid, and that the lot of land, at the time it was to be
conveyed, was worth $3 per acre; and was, on actual
survey, found to contain no more than 421 acres and 1-8.

On the part of the defendant it was proved, that h
and his wife, on the 2d of *September*, 1799, conveyed the
lot in question, in fee simple, to *James Caldwell*, subject
to the above agreement with the plaintiffs, for a convey-
ance to them; and that *Caldwell*, afterwards, delivered
to the plaintiffs a deed of the same lot, describing it as
"containing six hundred acres of land, be the same
more or less." The defendant insisted upon the delivery
of this deed, as a satisfaction and discharge of the con-
dition of the bond.

A verdict for the plaintiffs, for $654, was taken by
consent, subject to the opinion of the court on a case, in

which the above facts were stated. It was agreed that the judgment should be entered for such sum as the court might direct, but in case they decided in favour of the defendant, then a judgment of nonsuit was to be entered.

The only point was, whether the delivery of a deed, for 421 acres and 1-8 of land, could be deemed a satisfaction of the obligation of the defendant, expressing the lot to contain 600 acres.

*Gold*, for the plaintiffs. The defendant must either show a performance, in the *terms* of the condition, or an accord and satisfaction. He must prove that he has conveyed 600 acres of land to the plaintiffs, or, that they have agreed to accept of a less quantity. There is no middle course. By [*]inserting the words "more or less," [ * 39 ] in the deed, the grantees are precluded from any action against the grantor, in case of deficiency. There is then no performance of the condition.

It is stated, that the deed was tendered and delivered; but it is not explained in what manner it was done. An accord and satisfaction must be reasonable. If the satisfaction be in kind, it must be to the same amount.* * 5 *Coke*,118, *Pinnel's case.*

*Van Vechten*, for the defendants. The agreement was to give a warranty deed for the lot of land. The warranty extends to the title, not to the quantity of land. The contract was to convey a certain lot, not a specific quantity, as 600 acres; these words are merely descriptive. Suppose the lot had contained 800 acres, would the defendant have been entitled to claim the surplus quantity? The defendant undertook to convey the lot, as it is described by the surveyor general.† It is like † 1 *Caines*, the case of land bounded by natural objects; the grant 493, *Staring* will be confined to those objects, without regard to v. *Defendorf* courses and distances. There was a tender and acceptance; for a delivery includes an acceptance. By accepting the deed, it is necessarily implied that the plain-

NEW-YORK,
Nov. 1806.

Mann & Toles
v.
Pearson.

‡ *Law of Damages,* 52.

[ * 40 ]

tiffs knew what it contained.    There has been, therefore, a complete performance of the contract.

As to the measure of damages, the true rule is, to take the difference between the quantity sold, and the real quantity, in proportion to the consideration money.    The rule of damages in cases of an eviction, does not apply here ; for there was no eviction.

*Gold*, in reply.    If the defendant did not intend to convey a precise quantity, he should have added, in his contract, the words, more or less.    Where the party does not mean to bind himself as to the quantity, the words more or less are inserted.    The words tendered and delivered do not amount to an acceptance in full performance of a contract.    The case cited from *Caines*, does not apply to executory contracts.    The universal rule as to damages is the value of the thing at the time the contract is to be performed.‡

[*]SPENCER, J.    The plaintiffs, by suing for the deficiency of acres in the lot, admit, that the deed given by *Caldwell*, has been accepted by them.    It then follows that, by consent of parties, the condition of the bond has been complied with, unless it was a part of the condition, that lot no. 78, in the township of *Lysander*, should contain 600 acres.    The action is for not giving a deed, as near as may be, in the words of the condition.    It is necessary, then, to examine, whether the deed given by *Caldwell*, is not, in its legal operation, as extensive as any deed the defendant was bound to give.    If it be, then it will be admitted that the plaintiffs cannot recover.

I consider the premises sold, as fully and definitely described, as if metes and bounds had been used in ascertaining the thing granted ; and so must the parties have understood it.    Almost all the lands in the counties of *Cayuga*, *Onondaga*, and *Seneca*, have been surveyed into lots by the surveyor-general, under public acts, and,

NEW-YORK
Nov. 1806.

Mann & Toles
v.
[Pearson.

pursuant to the directions of those acts, maps have been returned to the office of the secretary of state, on which patents have been issued. It cannot be pretended, therefore, that when the parties contracted about a lot, defined by *number*, *town*, and *county*, that they did not act with reference to the maps, describing and destinguishing this lot, in the secretary's office. It necessarily follows, that the subject matter of the agreement was precisely ascertained.

I am then brought to consider, whether, in a deed, containing covenants of seisin, and in which the land granted is definitely described, either by metes and bounds, or as a lot distinguished on record, an erroneous estimate of acres furnishes a ground of action on the covenant of seisin. It is settled that if a man lease to another the meadows in D. and S. containing ten acres, and in truth, they contain twenty, all shall pass.* If, then, the grantors would take, in case the lot contained more than the quantity mentioned, and where the words, *more or less*, do not occur, it would seem unreasonable and inconsistent, that the grantor should be made responsible when the quantity was less. Upon this motion, [*]there would be no reciprocity. The grantee might get more, but could never have less than the quantity mentioned.

* 13 *Vin.* 79. pl. 24.

[ * 41 ]

The enumeration of quantity is not the essence of the contract; it is matter of description merely. The only certainty in the present case is the lot, and this alone is the subject of the covenants. The books afford very little information on this point. It may be observed that there are no cases to be found which warrant this action ; and, though probably the case has not occurred in this state, it has in *Connecticut*. The supreme court of that state, in the case of *Snow* v. *Chapman*,* decided, that where lands were specifically bounded and described, and were stated in the deed to contain 110 acres, an ac-

* 1 *Root*, 528.

tion of covenant would not lie on the covenants of seisin, though in truth, the quantity was only 90 acres ; because, the deed granted nothing but the lands within the boundaries, and to those lands only the covenants related. I cite this decision as the opinion of a court of high respectability, proceeding upon the English common law, in the case before them. There are other circumstances in the present case which would, I think, demonstrate that the parties only meant to contract about the lot ; but I forbear to mention them, because unnecessary to the determination of this cause.

I will only add, that in my own experience, and I may say with propriety, in the universal opinion of conveyancers, the enumeration of quantity, after a description of the subject, is superfluous and immaterial, and in any view, only matter of description.

My opinion therefore is, that a judgment of nonsuit must be entered.

TOMPKINS, J. and KENT, Ch. J. declared themselves to be of the same opinion.

THOMPSON, J. This is an action of debt, upon a penal obligation, the condition of which is, that on the plaintiffs paying certain sums of money therein specified, the defendant binds himself to grant and convey to the plaintiffs, by a good and sufficient warranty deed, lot No. 78, in the township of *Lysander*, and county of *Onondaga*, [*]containing 600 acres. It is admitted that the consideration money has been paid, and it is proved that the defendant caused to be made and delivered to the plaintiffs, a deed for the lot, describing the same, however, with respect to quantity, " as said to contain 600 acres, be the same more or less." But there is nothing in the case to warrant the inference, that the plaintiffs *accepted* the deed, as a fulfilment of the condition of the bond. On actual survey, the lot was found to contain only 424 acres, and 1-8th; and the question is, whether such a

[ * 42 ]

deed can be considered as a compliance with the condi-
tion of the bond.. I think it cannot. Had there been no
other description of the premises to be conveyed than
generally, lot No. 78, the number of acres it might be
found to contain would have been immaterial. It might
therefore have fairly been presumed, that the purchasers
took upon themselves all risk, with respect to the quan-
tity. But here the quantity is superadded as an essen-
tial part of the description of the premises to be convey-
ed. There are no restrictive words whatever, qualify-
ing the covenant, so as to limit it to the lot, without re-
gard to the number of acres. I consider the covenant
equivalent to a warranty, that the lot should contain 600
acres. It is not like the case of a lot particularly des-
cribed by metes and bounds, which must controul the
quantity. That proceeds upon the ground of miscalcu-
lation. No such inference is to be drawn in the present
case. If we are to indulge conjectures with respect to
the probable intention of the parties, it is much more rea-
sonable to suppose that they considered the lot as con-
taining 600 acres; because, such is the usual quantity in
the military lots. Had not this been their understand-
ing, the premises would, doubtless, have been described
generally as lot No. 78. The description of the premi-
ses in the deed is essentially variant from that in the
bond, by the addition of the terms *more or less.* (*Owen,*
133. 14 *Vin.* 97.) The deed should have substantially
comported with the bond, otherwise it cannot be a per-
formance of the condition. If, from the terms of the co-
venant, [*] the intention and understanding of the parties  [* 43.]
be doubtful, that construction must be adopted, which is
most strong against the covenanter. It was asked by
the defendant's counsel, what would be the operation of
this bond, had the lot contained more than 600 acres.—
The answer is obvious. The whole must have been con-
veyed to the plaintiffs, being included under the general

NEW-YORK,
Nov. 1806.

Mann & Toles
v.
Pearson.

\* 1   Caines,
493.   Saville,
114. 14   Vi
ner, 97.

description of lot No. 78.; and this would be conforma-ble, both to the English authorities, and to the decision of this court, in the case of *Jackson, ex dem. Staring,* v. *De-fendorf.*\* But, it by no means follows from this, that, if there be a deficiency, the loss must fall upon the cove-nantees; they rely upon their covenant for security.—The covenanter is presumed to know *what he undertakes* to sell and warrant; and if he adopts a general descrip-tion that will clearly include the whole lot, he ought to be stopped from claiming any part of it.

My opinion therefore is, that the plaintiffs are entitled to recover; and by the case, it is submitted to this court to direct the rule by which the damages are to be estima-ted. I consider, that there is a failure of title in the grantor, to the extent of the difference between 600 acres, and the quantity of land that the lot was found to contain. In such case, the rule of damages, according to the decision of this court, in the case of *Staats v. Ex-ecutors of Ten Eyck,*† would be the consideration money and interest. The deficiency is 125 acres, and 7-8ths. The consideration money (at the rate of $1000 for 600 acres) is $1 and 66 cts. per acre, which, with interest, calculated from the 1st *February,* 1799, will give the amount for which the plaintiffs are, in my opinion, enti-tled to judgment.

† 3   Caines,
111.

LIVINGSTON, J. There is no ambiguity in this con-tract. Not only a certain lot of land, in the township of *Lysander,* is to be conveyed, but it is to contain *six hun-dred acres.* This is the defendant's express agreement, and we have no right [\*] to impose another on the plain-tiffs. There is no reference to maps, nor are there any words of qualifications, such as *thereabouts, more or less,* or the like; nor a line of proof, that any map was ever made, or filed, any where. The owner, if all this were done, must be supposed to know the contents of the lot, and

[\* 44.]

the price must have been regulated on his statement of the quantity. If *only* the number and town had been mentioned, the plaintiffs must have taken it, however small; but when the *exact* number of acres is thus fixed, the *quantity* becomes as much parcel of the bargain, as the situation, or title of the land. Even referring, perhaps, to a map, without apt words of limitation, would not have helped the defendant.

The case from *Caines\** has no bearing on this. A map of the patent was there referred to, for boundaries, &c. and the lot, although designated by number, *was said* to contain 200 acres, " *more or less.*" The court held, (nor was there room for doubt, there being no *certain* number of acres granted) that the *whole* lot passed, notwithstanding it measured more than 200 acres. This comported with the contract, which was explicit as to the *whole* lot, but indefinite as to its size. Before, however, this decision can serve the defendant, he should show, that he has used the same precaution; but in vain do we look in his bond for such expressions as, " *it is said,*" or " *more or less,*" or " *thereabouts,*" or other terms, that in any way controul the purchaser's clear right to have 600 acres.— When one party pays for, and the other agrees to convey this quantity, by what rule of justice, or law, (which, according to the boast of its professors, is the perfection of reason) can he be compelled to take up with a small strip of ground not large enough to build a house on? If the condition of a bond be, to grant a certain lot of ground in the city of *New-York*, by its number, street, and ward, and containing 200 *feet on each side*, will a deed, for a piece of ground not an inch square, be a performance? And yet, what difference is there between the cases?

My construction of the condition of this bond, (if there be any room for construction, when the meaning is so plainly expressed) is, that the plaintiffs are to have the whole of lot number 78, even if it exceed 600 acres; but

NEW-YORK,
Nov 1803.

Mann & oles
v.
Pearson.

*\* Vol. 1. p. 493.*

that it shall contain that number *at least*. It is not at all probable, that a grantor, who must know his rights, will make a representation injurious to himself. If he does, it must generally be his own fault. It cannot proceed from a fraudulent intent, which may be a motive to misrepresentation the other way. Not to be misunderstood, I repeat, that if a contract be made for the sale of a lot not otherwise described than by its number, and reference to a particular map, its contents must be determined by the map; but when, as is the case here, a bond is given, with a condition to execute a deed for a lot, without referring to a map, and as absolutely containing a *certain* quantity of land, the obligee is entitled to have a deed of so many acres, or the penalty will be forfeited. What might be the effect of a suit, on the conveyance itself, if it were excepted, is another question, and not before us. We are now inquiring, whether a deed for a lot, *said* to contain 600 acres, is complying with a positive and explicit agreement, to give a deed for so many acres absolutely, and without any qualification; not what would be the effect of a suit on such deed. It is said, that this question has been otherwise decided in Connecticut. If that were the case, I should not, without great hesitation, differ from a court whose reputation for intelligence stands so high. But the case of *Snow* v. *Chapman*,* is in no respect like the one before us.—

* *Root*, 528. There the land was particularly bounded *by lines*, &c. and the court very properly say, that the deed granted nothing but the land within the *bounds described*. But what are the bounds of this lot? Does merely stating that it was a lot, lying in such a town, *ex vi termini*, imply what were its contents? If so, it was an idle thing in the plaintiffs to have any thing inserted in the bond about the quantity. Were we at liberty to travel out of the bond, (which must be done before judgment can be

given for the defendant) or had we a right to look to the intention, when the language used is explicit, I should say, that this contract was, no doubt, made on an express understanding, that the lot should contain 600 acres, and that if it did not, the defendant would refund for the deficiency, which proves to be [*] very considerable. But I lay no stress whatever on what was probably intended, but, confining myself to the contract, am constrained to say, that the defendant is liable to this suit. On the subject of damages, I concur in the opinion delivered by my brother *Thompson.*