(50 App. Div. 595.)

## EGELHOFF et ux. v. SIMPSON.

(Supreme Court, Appellate Division, Second Department.    April 14, 1900.)

BOUNDARIES—REFERENCE TO MONUMENTS—MARKETABLE TITLE.

A deed which describes the premises by reference to a street corner is presumed to refer to it as it exists at the time of the execution of the deed; and when a grantor of land conveyed to him by reference to a street corner, the location of which is subsequently changed by the widening of one of the streets, thereafter conveys the land by the same description as that contained in the deed to him, the grantee will acquire no title to the land described in the first deed, where the distance of the point of beginning from the corner is the only precise and definite statement in the whole description by which the location of the premises can be ascertained with intelligible certainty, and hence his grantees have no marketable title to the land which one who has contracted to purchase it can be compelled to accept.

Action by George Egelhoff and another against George Simpson on an agreed statement of facts to determine the marketable quality of plaintiffs' title to real estate.    Judgment for defendant.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

Albert R. Moore, for plaintiffs.
Edward M. Perry, for defendant.

HIRSCHBERG, J.    The controversy related to the marketable quality of plaintiffs' title to real estate, which real estate the defendant has agreed to purchase.    Peter Reid conveyed to John Gill, by deed dated January 16, 1858, and recorded June 27, 1860, certain premises situated in the block bounded by Third and Fourth avenues and Fourteenth and Fifteenth streets in Brooklyn, described as follows:    "Beginning at a point on the southwesterly side of Fourteenth street, distant five hundred and fifty-seven feet ten and one-half inches northwesterly from the westerly corner of Fourth avenue and Fourteenth street, running thence northwesterly along Fourteenth street twenty feet; thence southwesterly, and parallel with Fourth avenue, ninety-two feet and eight inches; thence southeasterly, and nearly parallel with Fourteenth street, twenty feet; and thence northeasterly, and parallel with Fourth avenue, ninety-three feet and two inches, to the place of beginning."    Fourth avenue was thereafter widened by adding 40 feet to its northwesterly side by virtue of the provisions of chapter 299 of the Laws of 1861, and the work was completed, and the pavement, curb, and sidewalk laid, before March 7, 1867.    As a result at that date the point of beginning of the premises conveyed by Reid to Gill was distant only 517 feet 10½ inches northwesterly from the westerly corner of Fourth avenue and Fourteenth street, instead of 557 feet and 10½ inches, as theretofore.    On March 7, 1867, John Gill and wife conveyed to Harriet Williams, by deed dated that day, and recorded March 14, 1867, premises described by the same words as the description contained in the deed from Reid to Gill, but no reference is made to that deed.    Harriet Williams conveyed to Joseph Bradford by deed dated May 5, 1870, and Bradford conveyed to Clarkson

Crolius by deed dated March 1, 1875, the property, by the same description as in the deed to Gill. On July 10, 1882, Joseph Bradford executed to Clarkson Crolius a deed recorded July 15, 1882, reciting that it was given to correct an error in the description contained in the previous deed between the same parties arising from the widening of Fourth avenue 40 feet on the northwest side, and conveying and confirming to the grantee premises described substantially as in the deed from Reid to Gill, excepting that the point of beginning is stated to be "distant five hundred and seventeen (517) feet and ten and one-half (10½) inches northwesterly from the point of intersection of the southwesterly line of Fourteenth street with the northwesterly line of Fourth avenue as now laid out." On May 15, 1890, the title of Clarkson Crolius in the premises so described was vested in the plaintiff George Egelhoff by virtue of a deed dated that day, and recorded June 19, 1890, whereupon he entered into, and still has, possession of the property. On June 18, 1898, the plaintiff George Egelhoff contracted with the defendant to sell the premises described in the last-mentioned deed, and to convey to the latter the absolute fee, but the defendant refuses to carry out the contract on the ground that the deeds from Gill to Williams and from Williams to Bradford do not convey the same lot which he has contracted to buy, and that the plaintiffs' title is defective and unmarketable. From the date of the deed from Reid to Gill, January 16, 1858, down to the day after the date of the recording of the deed from Gill to Williams, March 15, 1867, Gill was not the owner of any piece or parcel of land within the block referred to, except the premises in question, and no conveyance of any lot of land on that block by him is recorded during that period excepting the deed to Harriet Williams; and from the date of the deed from Reid to Gill, January 16, 1858, down to the date of the deed of correction by Bradford to Crolius, July 10, 1882, no conveyance exists of record conveying or purporting to convey the premises in question, save these herein referred to. The defendant paid to the plaintiff George Egelhoff the sum of $200 on account of the purchase at the time the contract was executed, and afterwards expended $58.25 in an examination of the title. The submission does not indicate that any of the parties concerned in the devolution of the title were ever in possession of the property excepting the plaintiff George Egelhoff. Nor is there anything necessarily showing that John Gill was not the owner, on March 7, 1867, of lands on the southwesterly side of Fourteenth street 557 feet 10½ inches northwesterly from the corner of Fourth avenue and Fourteenth street. On this state of facts the court cannot compel the defendant to take the title. Very likely the property which John Gill bought from Peter Reid was the same as that which he afterwards conveyed to Harriet Williams, but there is nothing in the conveyances which attests that fact with reasonable certainty. In the latter conveyance there is no reference whatever to the former, nothing to indicate that the premises conveyed by the later deed were the same as those described in the earlier one. And, unfortunately, there is nothing in the description of the property to locate it aside

from the distance of the point of beginning from the westerly corner of Fourth avenue and Fourteenth street. If, independently of the distance of the property from this corner, there were marks of identity in the description which would serve to locate it,—such as its propinquity to adjoining or neighboring property, or the identity which attends upon street numbering,—the conclusion might well be different. It is true the lot is irregular in shape, being 20 feet front and rear, with one side 6 inches longer than the other; but there is nothing in the submission to indicate that this is an uncommon peculiarity, or that on March 7, 1867, just such a lot was not located on Fourteenth street 557 feet and $10\frac{1}{2}$ inches northwesterly from the westerly corner of Fourth avenue. There is no latent ambiguity, and no ambiguity apparent on the face of the document. The deed to Harriet Williams describes with precision the property assumed to be conveyed, and it must be presumed to describe it in accordance with the then existing conditions and surroundings, in the entire absence of evidence to the contrary. The distance of the point of beginning from the corner of the two streets is the only precise and definite statement in the whole description by which the location of the premises can be ascertained with intelligible certainty. If this distance, as stated, were in conflict with any other statement in the description, it might be rejected; but there is no reason or authority for the proposition that this may be done with the only definite and certain element in the description which serves to fix the exact location, and in the absence of any conflict apparent on the face and in the terms of the description.

Cook v. Babcock, 7 Cush. 526, was an action of trespass, the defendant asserting title. The land was conveyed as bounded north on the line of the town of Blandford. The line was subsequently established by the legislature. A conveyance was afterwards made by a similar description, and the plaintiff claimed title by mesne conveyances under this deed. He offered evidence to show that at the time of the first conveyance the town line was understood and reputed to run further north than as afterwards fixed by the legislative act. Chief Justice Shaw said (page 528):

"When the description in a deed or devise is clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different. * * * When, indeed, upon application of the description to the land, it is doubtful what was intended, this is a latent ambiguity, and then evidence aliunde may be given; as where a description gives the line as running to a maple tree, marked, and two maple trees are found, either of which would answer the description. So here if the words had been the 'reputed' line, or the 'supposed' line, or words of that description. But the deed from Herrick to Clark, on which the question arises, was made after the dividing line between Blandford and Chester had been established by law, and must be presumed to have been known by the parties from the use which they made of it in the deed as a monument."

In Stearns v. Rice, 14 Pick. 411, where land had been conveyed bounded on a road, and afterwards the road was changed, by which a small strip of the land conveyed was separated from the remainder, and afterwards the grantee mortgaged by a description similar to that by which it was conveyed to him, bounding on the road, it

was held that this bound must be taken as the road then existed, and did not include the strip separated by the change of the road.

In Singer v. Mayor, etc., 47 App. Div. 42, 62 N. Y. Supp. 347, the appellate division in the First department has recently held that, where there is no ambiguity in a description referring to a monument, the location of which is not in doubt, parol evidence is not competent to show the intention of the parties adopting the monument, but such intention is to be determined as a legal proposition. Mr. Justice Rumsey said (page 44, 47 App. Div., and page 348, 62 N. Y. Supp.):

"The usual and ordinary rule in such cases is that, when the description of lands in the conveyance refers to any artificial monument as the boundary, such monument is controlling. Van Wyck v. Wright, 18 Wend. 157; Wendell v. People, 8 Wend. 183. In the application of that rule it has been held that where a highway is mentioned as a boundary of land it means the highway as it exists and is open, and not the highway as it may be laid out on a map. Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214; Water-Power Co. v. Tibbetts, 31 Conn. 165; O'Brien v. King, 49 N. J. Law, 79, 7 Atl. 34."

In Jones v. Smith, 73 N. Y. 205, the rule was stated in the head-note that:

"Where a deed contains an accurate description by permanent boundaries capable of being ascertained, a general reference, in addition, to the premises as in the possession of the grantor or grantee, will not pass title to lands outside of the boundaries given. The more certain and permanent portions of the description will control."

In Thayer v. Finton, 108 N. Y. 394, 399, 15 N. E. 616, the court said:

"A number of cases are cited in the opinion of the court below, but we are of the opinion that the principles laid down in them were incorrectly applied to this case. When ambiguity or imperfection exists in the description of land contained in a conveyance, it is competent to refer to general language, as well as to all parts of the deed, to locate and identify the property intended to be conveyed. Such are the cases of Jackson v. Barringer, 15 Johns. 471; Child v. Ficket, 4 Me. 471; Marr v. Hobson, 22 Me. 321; and Grandin v. Hernandez, 29 Hun, 399. So, too, where by proof aliunde the deed it is shown that no property answering the description belongs to the grantor at the place indicated, but other lands in the vicinity, corresponding in some particulars to such description, did belong to him, a latent ambiguity is created, which may be solved by the further indications afforded by the deed, or by extraneous evidence. The case of Grandin v. Hernandez, in one of its aspects, was of this character."

The dictum in the next to the last sentence in this citation would seem to furnish some support to the plaintiffs' contention, but it appears that in the case cited,—Grandin v. Hernandez,—while the deed erroneously described the property as located in the block between Sixth and Seventh avenues, it was stated that the premises were the same as those conveyed to the grantor by a prior deed explicitly referred to, and in which the location was correctly stated to be in the block between Fifth and Sixth avenues.

We derive no aid from the cases on which the plaintiff chiefly relies: Patch v. White, 117 U. S. 210, 6 Sup. Ct. 617, 710, 29 L. Ed. 860; Govin v. Metz, 79 Hun, 461, 29 N. Y. Supp. 988; and Gallagher v. Quinlan, 10 App. Div. 402, 41 N. Y. Supp. 874. They are all cases of devise, to which the rule in 1 Jarm. Wills, 742, is applicable, that, "where the description is made up of more than one

part, and one part is true, but the other false, there, if the part which is true describe the subject with sufficient legal certainty, the untrue part will be rejected, and will not vitiate the devise." In the case at bar, however, the true part contains no characteristics which would not be applicable to any other lot of the same dimensions, and there is nothing in the deed·to connect it with the property conveyed by the prior grant. The only description which serves as a location is contained in the false part, and it therefore lacks the legal certainty which is essential to a deed. Under such circumstances we must enforce the rule, as stated in Heller v. Cohen, 154 N. Y. 299, 306, 48 N. E. 528, that:

"A purchaser ought not to be compelled to take property the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one that, if he wishes to sell, would be reasonably free from any doubt which would interfere with its market value. If it may be fairly questioned, specific performance will be refused. Vought v. Williams, 120 N. Y. 253, 257, 24 N. E. 195, 8 L. R. A. 591; Shriver v. Shriver, 86 N. Y. 575, 584; Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905. So, where there is a defect in the record title, which can be supplied only by a resort to parol evidence, and the title may depend upon questions of fact, the general rule is that the purchaser will not be required to perform his contract. Irving v. Campbell, 121 N. Y. 353, 24 N. E. 821, 8 L. R. A. 620; Holly v. Hirsch, 135 N. Y. 590, 598, 32 N. E. 709."

We may say, as was said in Heller v. Cohen, page 313, 154 N. Y., and page 531, 48 N. E., that:

"While we do not regard the plaintiffs' title as actually bad, and while it is quite probable that a good title may be established, yet we think the proof was insufficient to show that it was so far free from any reasonable doubt as to require its acceptance by the defendant."

The defendant must have judgment in accordance with the terms of the submission, without costs. All concur.